In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2432

REGINALD D. PURVIS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08 C 50216—**Philip G. Reinhard,** *Judge.*

ARGUED SEPTEMBER 8, 2011—DECIDED NOVEMBER 28, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* On June 5, 2006, Reginald D. Purvis
was sentenced as a career offender for conspiracy to
distribute crack cocaine. Purvis appealed the conviction
and sentence. This Court dismissed the appeal on December 7, 2006. Purvis's petition for a writ of certiorari was
denied by the Supreme Court on October 1, 2007.

On September 29, 2008, Purvis filed a motion under
28 U.S.C. § 2255 to vacate, set aside, or correct his sen-

tence and then, on February 17, 2009, Purvis requested a stay of the § 2255 motion. On March 19, 2009, the district court denied the motion to stay, and on March 23, 2009, denied Purvis's § 2255 motion.

Purvis filed a notice of appeal on April 6, 2009. The district court, construing the notice of appeal as a request for a certificate of appealability, denied the request. Purvis filed a notice of appeal arguing that his notice of appeal was misconstrued as a certificate of appealability. On November 19, 2009, this Court vacated the district court's order and remanded the case for further proceedings and granted Purvis's motion to withdraw the request for a certificate of appealability.

On January 12, 2010, on remand, the district court again denied Purvis's § 2255 motion and his motion to stay; Purvis filed a motion to reconsider on February 1, 2010, and on February 5, 2010, the district court withdrew the January 12, 2010 order.

The district court denied Purvis's motion to reconsider on June 2, 2010 and again denied Purvis's § 2255 motion and motion to stay. Purvis filed a notice of appeal on June 14, 2010. On October 19, 2010, this Court granted Purvis's request for a certificate of appealability.

## I. BACKGROUND

On June 5, 2006, Purvis was sentenced as a career offender under U.S. Sentencing Guidelines § 4B1.1 for conspiracy to distribute at least 50 grams of crack cocaine. On August 20, 2007, Purvis filed a motion in state court

to vacate one of the two prior convictions underlying his career-offender sentence. Before that motion was ruled on, the Supreme Court denied Purvis's certiorari petition on October 1, 2007.

Purvis next filed a timely motion *pro se* under 28 U.S.C. § 2255 challenging his federal sentence on the basis of a variety of ineffective assistance claims. In that motion, Purvis also referenced his then ongoing suit to vacate a state conviction, stating:

> Notwithstanding the fact that movant is currently in litigation with **THE PEOPLE OF THE STATE OF ILLINOIS in case no. 93 CF 57**, requesting an order to vacate, that of which was used by this Honorable Court to upward depart to "Career-offender status" at sentencing in **(PSR at 9).**

The Government's response to Purvis's § 2255 motion did not reference Purvis's statement that he was challenging his underlying state conviction. In his reply, Purvis again noted that he was challenging his underlying state conviction:

> * Let the Court take Judicial Notice that the movant is currently in litigation with THE PEOPLE OF THE STATE OF ILLINOIS in case no. 93 CF 57, requesting an order to vacate, that of which was a predicate offense used by this Honorable Court to upward depart to the Carrer (sic) offender status at sentencing (See-PSR) with a court appearance scheduled for 1/23/09. See Johnson v. United States, 125 S.Ct. 1571 (2005) 73 U.S.L.W. 4270.

(emphasis omitted).

On February 17, 2009, Purvis requested a stay of his § 2255 motion hearing until the state court decided his motion to vacate. In this filing, Purvis explained that his counsel and the state prosecutor agreed that his state conviction should be vacated and that a vacated state conviction would affect his enhanced sentence in fed- eral court and that, if a stay was not granted, he would have to seek leave from the court of appeals to file a successive § 2255 motion after his state court conviction was vacated. The district court denied Purvis's stay request, and ultimately the § 2255 motion.

On June 30, 2009, the Illinois circuit court entered an order vacating Purvis's state conviction and granted his motion to withdraw his guilty plea.[1] As result of his vacated sentence, on September 24, 2009, Purvis sought leave from this Court to file a second or successive § 2255 motion to challenge his career-offender status. We denied Purvis's request; the issue of Purvis's vacated conviction and career-offender claim was already pending before this Court as part of Purvis's appeal of the district court's decision to deny his stay request and § 2255 motion.

Ruling on the district court's denial of Purvis's stay request and his § 2255 motion, we vacated and remanded for "additional findings of fact relating to the timeliness of Purvis's career-offender claim." Specifically, this Court directed the district court to "address the effect, if any,

---

[1] Purvis was reindicted for the alleged acts underlying his vacated state sentence on January 7, 2011.

of the fact that Purvis notified the court in the brief of his § 2255 motion of his efforts to have his state conviction vacated." We further directed the district court to "address whether under *Johnson v. United States*, 544 U.S. 295 (2005), a change in Purvis's state conviction is a new fact that would start a renewed one-year limitations period and thus make this claim timely." In addition, we agreed with the district court that Purvis did not establish ineffective assistance of counsel.

On remand, the district court found that Purvis's career-offender claim was not timely and concluded that "the only remaining avenue of relief for Purvis is to either appeal this order or seek authorization from the Court of Appeals to file a successive motion under § 2255." We now explain why we reverse and remand.

## II. DISCUSSION

### A. Standard of Review

When a district court rules on a § 2255 motion, we review the findings of fact for clear error and the rulings of law *de novo*. *Hall v. United States*, 371 F.3d 969, 972-73 (7th Cir. 2004). We review decisions concerning stays for abuse of discretion. *Tyrer v. South Beloit*, 516 F.3d 659, 666 (7th Cir. 2008).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes, among other things, a one-year period of limitations on motions by prisoners seeking to modify their federal sentences under 28 U.S.C. § 2255: "The limitation period shall run from the latest of— . . .

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

In *Johnson v. United States*, the Supreme Court held that the state court's vacatur of a predicate conviction is a new "fact" that triggers a fresh one-year statute of limitations under § 2255(f)(4), so long as the petitioner exercised due diligence in seeking that order. 544 U.S. 295, 302 (2005). Thus, *Johnson* established that the basis for a claim challenging a sentence predicated on faulty state convictions arises when the order vacating those predicate convictions issues. *Id*. at 306-07. The vacatur order gives a defendant both the basis to challenge the enhanced federal sentence and a new one-year period in which to pursue that challenge.

## B. The Timeliness of Purvis's Career-Offender Claim

The Government argues that Purvis sat idle for twelve years, taking no steps from March 20, 1995—the date of his state sentence—to August 20, 2007, when Purvis filed his *pro se* motion to vacate and withdraw his plea. The relevant time period under a *Johnson* diligence inquiry, however, does not begin with date of the state sentence; rather, it begins with the date of the federal judgment. *Id*. at 309 ("After the entry of [federal] judgment, the subject of the § 2255 claim has come into being [and] the significance of inaction is clear . . . ."). Purvis attacked his state-court conviction 15 months after he was sentenced as a career offender. During those intervening months, he appealed his federal conviction,

sought rehearing when that appeal was unsuccessful, then sought certiorari in the Supreme Court. He prioritized his claims and moved quickly in seeking to vacate his predicate state-court conviction after losing his federal merits appeal. Under these circumstances, we conclude Purvis acted diligently.

The Government argues that Purvis's career-offender claim is not timely because he filed his § 2255 motion before vacating his state conviction. In other words, Purvis had no career-offender claim prior to vacatur of his state conviction. The Government's position finds support in *Johnson*, *Custis v. United States*, and *Daniels v. United States*, which together establish that only after an underlying conviction is vacated may a defendant seek relief in federal courts. *Id.* at 303-04; 511 U.S. 485, 497 (1994); 532 U.S. 374, 382 (2001). Thus, according to the Government, because Purvis first filed a § 2255 motion raising ineffective assistance claims before his career-offender claim was ripe, he can only raise the now ripe career-offender claim in a second or successive § 2255 motion. But, as the Government realizes, Purvis cannot meet the gatekeeping provisions of 28 U.S.C. § 2244(b)(2), which only allow a petitioner to file a second or successive § 2255 habeas petition in limited circumstances. *See* §§ 2244(b)(2)(A)-(B).

As a result of the combined effect of AEDPA's one-year statute of limitations and the gatekeeping provisions of § 2244(b)(2), Purvis, and similarly-situated petitioners, are faced with a catch-22. If he waits to file his § 2255 motion until his career-offender claim is ripe—i.e., after

vacatur of his state conviction—he risks that any other claims that he could have brought, such as an ineffective assistance, will be time-barred because AEDPA's one-year statute of limitations will have run. Alternatively, a petitioner who decides to first file an ineffective assistance claim within AEDPA's one-year statute of limitations period forgoes any unripe career-offender claims because § 2244(b)(2) bars him from later bringing a ripe claim in a second or successive § 2255 motion.

The Eleventh Circuit recently addressed this difficulty in *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011). It concluded that the petitioner's *Johnson* claim was not "second or successive" within the meaning of the gatekeeping provisions of § 2244(b)(2). *See id.* at 863-64. In *Stewart*, the petitioner was sentenced as a career of-fender. He then filed a § 2255 motion requesting addi-tional time to file a § 2255 motion and expressed his intention to raise an ineffective assistance claim. *Id*. The state court then vacated his predicate state conviction, and he promptly filed a second § 2255 motion, asserting a *Johnson* claim. *Id.* at 858. The Eleventh Circuit, applying the Supreme Court's reasoning in *Panetti v. Quarterman,* 551 U.S. 930 (2007), declined to literally interpret AEDPA's "second or successive" language and concluded that the petitioner properly raised his *Johnson* claim in his second § 2255 motion when it first became ripe. *Id*. at 864.

In *Panetti*, the petitioner filed a federal habeas petition that challenged his conviction but did not assert a *Ford* claim. 551 U.S. at 937. The district court denied his

petition on the merits. *Id*. The petitioner then filed a second habeas petition alleging, for the first time, that he was incompetent to be executed. *Id*. at 938. The Supreme Court granted certiorari to decide whether that petition constituted an improper "second or successive" habeas application under § 2244(b). *Id.*

The Court held that the petition was not "second or successive" within the meaning of § 2244(b) because "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." *Id*. at 945. The Court further reasoned that "[a]n empty formality requiring prisoners to file unripe *Ford* claims neither respects the limited legal resources available to the States nor encourages the exhaustion of state remedies." *Id*. at 946. Accordingly, the Court declined to construe AEDPA, which Congress "implemented to further the principles of comity, finality, and federalism, in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality, to the benefit of no party." *Id*. at 947.

Besides *Panetti*, the Supreme Court's earlier decision in *Rhines v. Weber* also addressed the present difficulty faced by Purvis. 544 U.S. 269 (2005). In *Rhines*, the Court examined the combined effect of AEDPA's one-year statute of limitations period and *Lundy*'s dismissal requirement for habeas petitions mixed with unexhausted and exhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). The Court observed:

. . . [P]etitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.

*Rhines*, 544 U.S. at 275.

Specifically, the Court considered "whether a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." 544 U.S. at 271-72. It concluded that the district courts indeed possess such discretion. In appropriate but limited circumstances, therefore, the Court concluded that the "stay and abeyance" procedure used by the district court in the case before it was proper. It cautioned, however, that overuse of that procedure might undermine the twin purposes of AEDPA: to encourage finality by requiring prompt resolution of federal habeas corpus petitions and to streamline the process by requiring total exhaustion of state court remedies prior to the federal action. *Id*. at 277. The district court must decide whether the petitioner had good cause for his failure to exhaust all claims and whether the unexhausted claims have some possible merit. *Id*. at 277-78.

While both the *Panetti* and *Rhines* approaches have support in Supreme Court precedent, we conclude that

the "stay and abeyance" procedure in *Rhines* should have been implemented to protect Purvis's unripe career-offender claim.

The district court denied Purvis's stay request, concluding that his proposed career-offender claim would not relate back to his claims in his original § 2255 motion. We determined that that decision was "erroneous" in our order dismissing Purvis's application to file a successive attack under § 2255. Furthermore, in vacating the district court's decision to deny Purvis's § 2255 motion, we directed the district court to "address whether under *Johnson* . . . a change in Purvis's state conviction is a new fact that would start a renewed one-year limitations period and thus make this claim timely." The district court did not engage in that analysis; rather, it determined that Purvis's *Johnson* claim must be brought in a second or successive § 2255 motion. What the district court failed to take into account is that if Purvis had acted with diligence under *Johnson*, his one-year statute of limitations would start anew, making his career-offender claim timely. And if his career-offender claim were timely, Purvis would have been able to amend his habeas petition to include that claim. *See* 28 U.S.C. § 2242 (habeas petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions."); Fed. R. Civ. P. 15(a) (leave to amend a pleading "shall be freely given when justice so requires.").

We see no reason why Purvis's unripe career-offender claim should be treated as fundamentally different than an unexhausted habeas claim when considering whether

a stay is proper. We are reluctant to find that a ripe *Johnson* claim brought for the first time in a second § 2255 motion is not "second or successive." Although that approach is logical and consistent with Supreme Court precedent, there is greater textual support in the statute for the procedure outlined in *Rhines*. That district courts may receive meritless and unripe *Johnson* claims does not outweigh a petitioner's interest in obtaining federal review. And in any event, that effect could be alleviated, and the purposes of AEDPA protected, by applying the limitations in *Rhines*.

We caution that the "stay and abeyance" of unripe *Johnson* claims should be limited to narrow circumstances where there is good cause for the petitioner's stay request, the claim is potentially meritorious, and there is no indication that the petitioner is engaging in dilatory tactics. *See Rhines*, 544 U.S. at 278.

In his stay request, Purvis indicated that a state court decision to vacate his predicate conviction was eminent and that his attorney and the prosecutor had agreed to vacate his conviction and plead down his initial charge. Moreover, there is no evidence that Purvis was engaging in dilatory tactics. The district court, therefore, erred to the extent it concluded that a stay was improper because Purvis's career-offender claim was unripe.

## III. CONCLUSION

For the reasons stated herein, we REVERSE and REMAND for further proceedings consistent with this opinion.

EASTERBROOK, *Chief Judge*, concurring. The court's opinion, which I join without reservation, leaves open a potentially important question: should the district judge resentence Purvis while the state prosecution remains pending?

Purvis was sentenced as a career offender under U.S.S.G. §4B1.1 because, on the date his federal sentence for distributing cocaine was pronounced, he had two earlier felony convictions for drug offenses. After Purvis began serving his federal sentence, he persuaded a state court to set aside one of those convictions. That decision entitled Purvis to an additional year within which to seek review of his federal sentence. See *Johnson v. United States*, 544 U.S. 295 (2005). Today the court holds that the district judge erred in concluding that Purvis's request for that review was either untimely or a "second or successive" federal petition. We remand "for further proceedings consistent with this opinion." But what does this mean concretely?

*Johnson* tells us that Purvis is no longer a career offender. He now has only one prior conviction for a drug offense. But the vacated conviction may be reinstated. The state judge has allowed him to withdraw his guilty plea, because he may have misunderstood the maximum punishment. Purvis has entered a new plea of not guilty and is awaiting trial. If he should be convicted, this would not restore his career-offender status for federal purposes. U.S.S.G. §4B1.2(c) tells us that a person is classified as a career offender only if he commits his federal offense after "sustaining at

least two felony convictions" for drug crimes or violent offenses. Given the retroactive effect of the state court's vacatur, Purvis had only one such conviction on his record when he committed his federal crime. But a conclusion that Purvis is not a "career offender" is not the end of the line for federal purposes.

Since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines have been advisory. We concluded in *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010) (en banc), that *Booker*'s approach applies to the career-offender Guideline as well as to other Guidelines. Defendants often benefit from this, because district judges have greater discretion to give below-Guideline sentences. But *Booker* and *Corner* work both ways: they give judges discretion to sentence above a range as well as below it. It may be prudent for a federal judge to use this discretion when for technical reasons a state crime committed long before the federal offense is treated as if committed later.

The guilty plea that Purvis was allowed to withdraw had been entered in 1993. When he committed his federal drug offense, two state drug-related convictions were on his record. If his state conviction should be reinstated after a trial (or a new guilty plea) he would be no less dangerous, no less likely to commit new crimes, and thus no less deserving of a recidivist sentence, than if the original state conviction had remained in place. *Booker* and *Corner* afford the sentencing judge discretion to give these facts whatever weight the judge believes they deserve. See *United States v. Woods*, 576 F.3d 400, 403

n.2 (7th Cir. 2009) (district court may impose a sentence in the career-offender range even when one or more of the defendant's prior convictions does not meet all requirements of §4B1.1).

This observation supposes that, when resentencing a federal offender, a district judge is entitled to consider things that happen between the original sentence and the resentencing. *United States v. Pepper*, 131 S. Ct. 1229 (2011), holds that, when resentencing a federal criminal, the judge may consider mitigating events after the original sentence. This principle, like that of *Booker* and *Corner*, also works both ways. Because the district judge thus could consider a new state conviction for Purvis's 1993 activities, the best approach on remand may be to wait and see what happens in the state prosecution.

I do not suggest that the judge is *required* to wait, only that it is within the judge's discretion to do so. If the judge thinks that any new conviction for acts 18 years ago would carry little weight, then Purvis should be resentenced without delay. But if the judge believes that the principles behind recidivist sentencing make final disposition of the state charge salient, then the court may elect to defer the federal resentencing until the state prosecution has been concluded.